ECLIPSE ARCHITECTURAL GROUP,
INC., et al., Plaintiffs,

v.

Kevin LAM, et al., Defendants,

Brickwell Community Bank, Appellant,

Hunter Construction, Inc.,
et al., Respondents.

No. A10–1607.

Supreme Court of Minnesota.

May 2, 2012.

Katherine M. Melander, Stephen F. Buterin, Jeffrey A. Scott, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for appellant.

Ryan R. Dreyer, Morrison Fenske & Sund, P.A., Minnetonka, MN, for respondents.

## OPINION

GILDEA, Chief Justice.

This case involves two mechanic's liens foreclosed against a hotel property. An agent of the respondent lien claimants, Hunter Construction, Inc., and Verde General Contractor, Inc., personally served mechanic's lien statements on the property owner. Appellant, Brickwell Community Bank, challenges the validity of this service. Brickwell argues that service of a mechanic's lien statement under Minn. Stat. § 514.08, subd. 1(2) (2010), is subject to the provision in Minn. R. Civ. P. 4.02 that prohibits a party to the action from serving "a summons or other process." Because a disinterested person did not effectuate service of the respondents' mechanic's lien statements, Brickwell argues the service was improper. As a result, Brickwell contends that respondents' mechanic's liens are invalid and cannot be foreclosed. The district court determined that service was proper and entered judgment in favor of respondents. The court of appeals affirmed. We granted review.

Because we conclude that a lien claimant may personally serve a mechanic's lien statement, we affirm.

The mechanic's liens at issue in this case arose out of a project to renovate a 7–story La Quinta Inns & Suites ("the hotel") situated on real property located in Ramsey County ("the property"). Wing–Heng, Inc. owned and operated the hotel. Kevin Lam is the owner of Wing–Heng.

In 2007, in order to finance the renovation of the hotel that had begun in 2006, Wing–Heng entered into a loan agreement with Brickwell that was secured by two mortgages on the property. After a series of general contractors left the hotel project, Wing–Heng retained Hunter Construction to take over as general contractor on the renovation. Midwest Building Maintenance, LLC, and Verde also performed work on the project.

In November 2007, Eclipse Architectural Group, Inc., a company that had performed architectural services related to the hotel's renovation, brought an action to foreclose the mechanic's lien it had filed against the property. While the Eclipse action was pending, Hunter Construction, Midwest, and Verde each filed a mechanic's lien statement with the Ramsey County Registrar of Titles in the amount of $124,458.97, $100,000, and $80,500, respectively. Hunter Construction, Midwest, and Verde then filed cross-claims as additional defendants in the Eclipse action, seeking to foreclose their mechanic's liens. In their pleadings, the lien claimants alleged that they had served their mechanic's lien statements on Lam and Wing–Heng by certified mail.

The Eclipse action proceeded to trial. After a number of claims resolved through voluntary agreements and stipulations, the issues at trial were limited to the validity and amount of the mechanic's lien claims of Hunter Construction, Midwest, and Verde.[1]

At trial, Ken Hunter testified about service of the respondents' mechanic's lien statements. Hunter, who worked extensively on the hotel renovation, was the sole owner of Midwest. Hunter had no ownership interest in Hunter Construction but was an officer and employee of Hunter Construction and authorized to bind the company. Hunter also testified that he had the authority to enter into binding agreements on behalf of Verde.

During his testimony, Hunter contradicted the assertion in respondents' pleadings that the mechanic's lien statements had been served on Lam and Wing–Heng by certified mail. When asked how he served the mechanic's lien statements, Hunter responded that he had served Lam and Wing–Heng's on-site project manager "[i]n-person" by "walk[ing] up to them and hand[ing] it to them," and "leav[ing] a copy of the document with them." Hunter maintained during cross-examination that he had personally served the mechanic's lien statements and was unaware that the pleadings indicated that service of the statements had been made through certified mail.

Lam disputed Hunter's testimony. Lam claimed that he was never served with the mechanic's lien statements. Specifically, Lam testified that Hunter had not delivered the mechanic's lien statements to him and that Lam had not received the statements by certified mail. Lam also denied that he had testified during an earlier

---

1. The district court found that Midwest had "failed to establish the reasonableness of its lien by a preponderance of the evidence" and accordingly denied Midwest's claim. Midwest did not appeal this determination. We therefore address the facts at trial only as they relate to Hunter Construction and Verde, the respondents in this appeal.

bankruptcy proceeding that Hunter had personally served him with the statements.

At the close of respondents' case, Brickwell moved for a directed verdict, arguing that the mechanic's liens were invalid because respondents, in using Hunter to serve their mechanic's lien statements, had failed to comply with Minn. R. Civ. P. 4.02. Brickwell argued that Minn. R. Civ. P. 4.02 applied and prohibited personal service of respondents' lien statements by an agent of respondents, whom Brickwell contended was a "party to the action" for purposes of the rule. The district court denied the motion.

In its findings of fact, conclusions of law, and order for judgment, the district court found "that the better evidence is that Ken Hunter served the February 21, 2008 mechanic's lien statements of Hunter Construction, Verde and Midwest personally on Kevin Lam, owner of Wing–Heng, and upon Mr. Mailatyar, Wing–Heng's on-site project manager, on or shortly after February 21, 2008." The court then determined that Minn.Stat. § 514.08, subd. 1(2), requiring a mechanic's lien statement to be "served personally or by certified mail on the owner or the owner's authorized agent," is inconsistent with the requirement in Minn. R. Civ. P. 4.02 that "a summons or other process" be served by a nonparty. The court reasoned that "a mechanic's lien statement does not constitute a 'summons or other process'" and "service of a lien statement does not commence an action or confer jurisdiction on the Court." Because the requirement of personal service by a nonparty "does not apply to service of a mechanic's lien statement," the court concluded that respondents' service of the mechanic's lien statements was proper. Alternatively, the court concluded that even if Minn. R. Civ. P. 4.02 was applicable to service of a mechanic's lien statement, "Hunter—as a nat-

ural person—is not a party to this mechanic's lien foreclosure."

The district court awarded mechanic's liens to Hunter Construction and Verde in the amounts of $86,808.55 and $72,500, respectively. The court subsequently denied Brickwell's motion for amended findings of fact, conclusions of law, and order for judgment, or in the alternative, a new trial. Brickwell appealed.

The court of appeals affirmed. *Eclipse Architectural Grp., Inc. v. Lam*, 799 N.W.2d 632 (Minn.App.2011). The court determined that Minn. R. Civ. P. 4.02 governs only "service of a 'summons or other process'" and was therefore inapplicable to service of a mechanic's lien statement, which "does not require any court appearance or answer." 799 N.W.2d at 637. Accordingly, the court concluded that "service of the mechanic's lien statement was proper." *Id.* We granted Brickwell's petition for review.

I.

■■■ The question presented in this case is whether the service of respondents' mechanic's lien statements was proper. To determine whether service of the statements by respondents' agent was proper, we examine the language and requirements of the mechanic's lien statutes. *See Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn.2010); *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.*, 279 Minn. 278, 283, 156 N.W.2d 748, 751 (1968) (explaining that "[m]echanics liens are purely creatures of statutes and the rights of the parties are governed by the language of the statutes"). Determining whether service of the mechanic's lien statements was proper also requires us to examine the applicability of the Minnesota Rules of Civil Procedure to the requirements in the mechanic's lien statutes. We

review the construction of Minnesota's mechanic's lien statutes de novo. *See Imperial Dev'rs, Inc. v. Calhoun Dev., LLC,* 790 N.W.2d 146, 148 (Minn.2010). Construction and application of the Minnesota Rules of Civil Procedure is also a question of law that we review de novo. *Shamrock Dev., Inc. v. Smith,* 754 N.W.2d 377, 382 (Minn.2008).

To provide context for the question of what constitutes proper service of a mechanic's lien statement, we begin with an overview of the lien statement's role in the statutory process for perfecting and enforcing mechanic's liens. Generally, "Minnesota's mechanic's lien statute allows a person or entity that contributes to the improvement of property ... to place a lien against the property improved." *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 758 (Minn.2010) (citing Minn. Stat. § 514.01 (2008)). To perfect a mechanic's lien, a lien claimant must file [2] and serve a statement of the claim within 120 days of completing work on the property. *See* Minn.Stat. § 514.08, subd. 1 (2010) (providing that a mechanic's lien "ceases at the end of 120 days after doing the last of the work ... unless" the lien claimant properly files and serves a statement of the claim). A mechanic's lien statement contains basic information about the claimant's contribution to the improvement on the property and must set forth, among other information, "a notice of intention to claim and hold a lien, and the amount thereof." Minn.Stat. § 514.08, subd. 2(1) (2010). A copy of the mechanic's lien statement must be "served personally or by certified mail on the owner or the own-

er's authorized agent or the person who entered into the contract with the contractor." Minn.Stat. § 514.08, subd. 1(2). The lien statement must also contain the claimant's acknowledgement "that a copy of the statement must be served personally or by certified mail within the 120–day period." Minn.Stat. § 514.08, subd. 2(8) (2010). Only after a claimant has "filed a lien statement for record and served a copy thereof on the owner pursuant to section 514.08," Minn.Stat. § 514.11 (2010), may the lienholder commence an action in district court to foreclose a lien. Minn.Stat. § 514.10 (2010).

With this statutory framework in mind, we turn to the parties' arguments. Brickwell argues that the requirement in Minn. Stat. § 514.08, subd. 1(2) that a mechanic's lien statement be "served personally" is subject to the limitations in Minn. R. Civ. P. 4.02. Rule 4.02 prohibits "a party to the action" from serving "a summons or other process." If Rule 4.02 is applicable to service of a mechanic's lien statement, Brickwell contends that service was improper in this case. Service was improper, according to Brickwell, because Hunter, an agent of the respondent lien claimant companies, was "a party to the action" and thus disqualified from making service upon Lam and Wing–Heng's on-site project manager. Even if Minn. R. Civ. P. 4.02 does not govern service of a mechanic's lien statement, Brickwell argues in the alternative that "served personally," when used in the context of a mechanic's lien statement, contemplates service by a nonparty. Respondents contend that Minn. R. Civ. P. 4.02 is inapplicable to service of

---

**2.** This case raises only the issue of service of the mechanic's lien statement. There is no dispute in this case that respondents' mechanic's lien statements were properly filed with the Ramsey County Office of Registrar of Titles in compliance with Minn.Stat. § 514.08, subd. 1(1) (2010) (providing that a statement of the mechanic's lien claim be filed for record "with the registrar of titles of the county in which the improved premises are situated" within the same 120–day period that a mechanic's lien statement must be served upon the property owner).

a mechanic's lien statement and that proper service of a mechanic's lien statement can be made by "a party to the action." We agree with respondents that a lien claimant may serve a mechanic's lien statement, and that service therefore was proper in the case.

## II.

We turn first to the question of whether Minn. R. Civ. P. 4.02 governs service of a mechanic's lien statement. Minnesota Rule of Civil Procedure 4.02 provides that "[u]nless otherwise ordered by the court, the sheriff or any other person not less than 18 years of age and not a party to the action, may make service of a summons or other process." In determining whether Minn. R. Civ. P. 4.02 is applicable to service of a mechanic's lien statement "we first look to the plain language of the rule and its purpose." *Rubey v. Vannett,* 714 N.W.2d 417, 421 (Minn.2006); *see also House v. Hanson,* 245 Minn. 466, 473, 72 N.W.2d 874, 878 (1955) ("The words of a court rule, like those of a statute, must be taken and construed in the sense in which they were understood and intended at the time the rule was promulgated."). We conclude that Minn. R. Civ. P. 4.02, and its requirement of service by a nonparty, does not apply to service of a mechanic's lien statement, because the lien statement is not a "summons or other process." [3]

■ Under the plain language of Minn. R. Civ. P. 4.02, the prohibition on service by a party governs only "service of a summons or other process." A "summons" is "[a] writ or process commencing the plaintiff's action and requiring the defendant to appear and answer." *Black's Law Dictionary* 1574 (9th ed. 2009); *accord Nelson v. Glenwood Hills Hosps.,* 240 Minn. 505, 512, 62 N.W.2d 73, 78 (1953) (explaining that a summons "constitutes merely a notice to defendant that an action has been commenced and, if no defense is offered or made, a default judgment will be taken against him"). "Process" is defined as "[t]he proceedings in any action or prosecution; a summons or writ, esp. to appear or respond in court." *Black's Law Dictionary* 1325. The definition of process goes on to explain that "'[p]rocess is so denominated because it *proceeds* or issues forth in order to bring the defendant into court, to answer the charge preferred against him, and signifies the writs or judicial means by which he is brought to answer.'" *Black's Law Dictionary* 1325 (quoting 1 Joseph Chitty, *A Practical Treatise on the Criminal Law* 338 (2d ed. 1826)); *see also* 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 4.5 (5th ed. 2009) ("'Other process' refers primarily to various extraordinary writs: habeas corpus, mandamus, quo warranto, certiorari and similar process.").

■ A mechanic's lien statement does not fall within the definition of "a summons or other process" in Minn. R. Civ. P. 4.02

---

3. In reaching the conclusion that Minn. R. Civ. P. 4.02 does not apply, the court of appeals looked to Minn. R. Civ. P. 81.01(a). *See Eclipse Architectural Grp., Inc. v. Lam,* 799 N.W.2d 632, 637 (Minn.App.2011). Rule 81.01(a) provides that the Minnesota Rules of Civil Procedure "do not govern pleadings, practice and procedure" contained in Minn. Stat. §§ 514.01 to 514.17 (2010), governing mechanic's liens, insofar as these statutes "are inconsistent or in conflict with the rules." Minn. R. Civ. P. 81.01(a), App. A.

We need not, and do not, decide whether Minn. R. Civ. P. 4.02 is inconsistent or in conflict with Minn.Stat. § 514.08, subd. 1(2) because we conclude that Minn. R. Civ. P. 4.02 does not govern service under Minn.Stat. § 514.08, subd. 1(2). *Cf. Kmart Corp. v. Cnty. of Clay,* 711 N.W.2d 485, 490 (Minn.2006) (concluding that a Rule of Civil Procedure was not applicable to the situation presented and therefore declining to reach the question of whether the rule conflicted with the statute at issue).

because, unlike a summons or process, service of such a statement does not commence an action. The filing and service of a lien statement "is not a proceeding to enforce the lien, but to preserve and continue it." *Hill v. Lovell,* 47 Minn. 293, 294, 50 N.W. 81, 81 (1891); *accord Sterling Elec. Co. v. Kent,* 233 Minn. 31, 34, 45 N.W.2d 709, 711 (1951) (explaining that filing a lien statement "is not the commencement of an action or proceeding to enforce the lien"); *see also Northland Pine Co. v. Melin Bros., Inc.,* 136 Minn. 236, 237, 161 N.W. 407, 408 (1917) (determining that "while the lien itself is purely a creature of statute, an action to enforce it is an ordinary civil action"); *Hurlbert v. New Ulm Basket-Works,* 47 Minn. 81, 83, 49 N.W. 521, 522 (1891) (distinguishing between a lien statement and an action to enforce a mechanic's lien by holding that the statement need only include the statutorily required information, and need not contain allegations that would be necessary to establish the lien in an action to enforce the lien); 6 Steven J. Kirsch, *Minnesota Practice: Methods of Practice* § 32.14 (3d ed. 1990) ("The [mechanic's lien] statement is not a substitute for a complaint and is not a first action required to enforce the lien. It is a statutory step required to prevent the lien from lapsing."). Moreover, filing and serving a mechanic's lien statement does not require that a lien claimant ever bring an action in district court to foreclose a lien. Indeed, Minn.Stat. § 514.08 specifically indicates that a mechanic's lien statement only gives "notice of *intention* to claim and hold a lien" upon the subject property. Minn. Stat. § 514.08, subd. 2(1) (emphasis added).

Finally, service of a lien statement, unlike service of process in a civil action, does not bear upon the jurisdiction of the court or a defendant's due process rights because upon receipt of the mechanic's lien statement a property owner need not take any action or appear in any forum. *See Tullis v. Federated Mut. Ins. Co.,* 570 N.W.2d 309, 311 (Minn.1997) (explaining that the court obtains jurisdiction over a defendant through proper service of process); *see also Patterson v. Wu Family Corp.,* 608 N.W.2d 863, 867 (Minn.2000) (explaining that proper service of process "serves the important function of actual, formal notice to the defendant of the action"). And receipt of a mechanic's lien statement does not require recipients to appear in court or respond to the statement in order to preserve their rights. *See Minn. Wood Specialties, Inc. v. Mattson,* 274 N.W.2d 116, 119 (Minn.1978) (explaining that the service of the mechanic's lien statement does not commence an action, but merely advises the property's owner "of the extent of the lien"); *Albert & Harlow Inc. v. Great N. Oil Co.,* 283 Minn. 246, 250, 167 N.W.2d 500, 504 (1969) (reasoning that the purpose of serving the mechanic's lien statement is to "put the owner on notice that the contractor is not paying his bills"). Because service of a mechanic's lien statement does not initiate a court action, we conclude that service of a mechanic's lien statement does not fall with the scope of the service requirements of Minn. R. Civ. P. 4.02.

Our reasoning in *Kirkpatrick v. Lewis,* 46 Minn. 164, 47 N.W. 970 (1891), supports our conclusion that Minn. R. Civ. P. 4.02 does not govern service of a mechanic's lien statement. There, we addressed the sufficiency of service by a party in an analogous situation where a mortgagee himself served a copy of the notice of sale in a mortgage foreclosure proceeding upon the homeowners. *See* 46 Minn. at 165, 47 N.W. at 971. In *Kirkpatrick,* the defendant homeowners challenged the mortgagee's competence to effect personal service because he was "a party to the action."

*Id.* at 166, 47 N.W. at 971. We first noted that the statute governing notice of a foreclosure sale provided that "such notice shall be served *in like manner* as summons in civil actions in the district court." *Id.* at 165–66, 47 N.W. at 971 (citation omitted). We determined that the prohibition on service by a party in civil actions was inapplicable to notice of a foreclosure sale and that the words "in like manner" in the mortgage statute "refer[red] only to the *mode* of service, and not to the persons *by whom* it may be made." *Id.* at 166, 47 N.W. at 971. In reaching our conclusion, we explained that "it would require a very liberal construction of the words 'party to the action' to make them applicable to a mortgagee selling under a power when the proceedings are wholly *in pais,* and not in any proper sense an action." *Id.* at 166, 47 N.W. at 971. Moreover, we rationalized that the concerns underlying the prohibition on service by a party in a civil action "do not obtain with equal force in the case of a notice in foreclosure proceedings," because a notice of a foreclosure sale was not "a judicial proceeding intended to result in a judgment which will be conclusive upon the parties." *Id.* at 166, 47 N.W. at 971.

■ Like the notice of sale at issue in *Kirkpatrick,* service of a mechanic's lien statement also does not result in a judicial proceeding. Additionally, just as in *Kirkpatrick,* it is difficult to describe who is a "party to the action" at the point in time when a mechanic's lien statement is filed and served because no proceedings have begun in court. In short, the rationale that supported our conclusion in *Kirkpatrick* reinforces our determination here that Minn. R. Civ. P. 4.02 does not govern service of a mechanic's lien statement.

In arguing for a contrary result, Brickwell relies on cases in which we have applied particular Minnesota Rules of Civil Procedure to certain mechanic's lien statutes. *See, e.g., Ryan Contracting, Inc. v. JAG Invs., Inc.,* 634 N.W.2d 176, 186 (Minn.2001), *overruled on other grounds by Mavco, Inc. v. Eggink,* 739 N.W.2d 148 (Minn.2007). But these cases are readily distinguishable and do not support application of Minn. R. Civ. P. 4.02 to service of a mechanic's lien statement. In *Ryan Contracting,* we determined that personal service of a summons commencing a mechanic's lien foreclosure action under Minn. Stat. § 514.11 was governed by Minn. R. Civ. P. 4.03. 634 N.W.2d at 186. We concluded that "section 514.11 does not specify how a summons should be served in order to *commence a lien action* and therefore the Minnesota Rules of Civil Procedure, specifically rule 4.03, apply and govern service in a lien action." 634 N.W.2d at 186 (emphasis added). Explaining that section 514.11 merely specified who was authorized to commence a lien action but did "not specify how each step of the action must proceed," we "fill[ed] in a gap left by the lien statutes" and applied the personal service requirements of Minn. R. Civ. P. 4.03. 634 N.W.2d at 186 n. 11.

Our analysis in *Ryan Contracting* does not support the conclusion that Minn. R. Civ. P. 4.02 governs service of a mechanic's lien statement. The issue of the applicability of the Minnesota Rules of Civil Procedure in *Ryan Contracting* arose within the context of a civil action to foreclose a mechanic's lien, and that case involved service of a summons to commence a lien action. The rule at issue there—Minn. R. Civ. P. 4.03—expressly governs "[s]ervice of summons." Because the rule, by its terms, applied and was not in conflict or inconsistent with the mechanic's lien statute, the rule controlled. 634 N.W.2d at 186; *see also Mavco,* 739 N.W.2d at 159 (applying the relation back doctrine in Minn. R. Civ. P. 15.03 to amendment of

pleadings in a mechanic's lien foreclosure action under Minn.Stat. § 514.12 (2010)); *Guillaume & Assocs., Inc. v. Don–John Co.*, 336 N.W.2d 262, 263 (Minn.1983) (concluding that Minn. R. Civ. P. 6.02, providing district courts with the "discretion to permit answers to be filed after the specified period has expired, if the defaulting party can show that the failure to act was due to excusable neglect," was applicable to defendant's filing of an answer under Minn.Stat. § 514.11 once an action to foreclose a mechanic's lien had been commenced). By contrast, the rule at issue here—Minn. R. Civ. P. 4.02—does not apply to service of a mechanic's lien statement because a mechanic's lien statement is not a summons or other process that commences a lien action in district court.

Brickwell also argues that our reference to the Minnesota Rules of Civil Procedure in *Eischen Cabinet Co. v. Hildebrandt,* 683 N.W.2d 813 (Minn.2004), supports the conclusion that Minn. R. Civ. P. 4.02 governs service of a mechanic's lien statement under Minn.Stat. § 514.08, subd. 1(2). In *Eischen* we determined that service of a mechanic's lien statement by certified mail under Minn.Stat. § 514.08, subd. 1(2) was effective upon mailing. 683 N.W.2d at 818. In so holding, we noted that our interpretation of section 514.08 was consistent with Minn. R. Civ. P. 5.02, which provides that service by mail is complete upon mailing. 683 N.W.2d at 818.

*Eischen* does not compel the conclusion that Minn. R. Civ. P. 4.02 governs service of a mechanic's lien statement. In *Eischen* we were clear that "[t]he civil rules are not binding in this case" and merely noted that consistency with the Rules of Civil Procedure provided additional support for our conclusion that service by certified mail was effective upon mailing. 683 N.W.2d at 818 n. 6. Moreover, unlike Minn. R. Civ. P. 4.02, which specifically

governs service of "a summons or other process," Minn. R. Civ. P. 5.02, at issue in *Eischen,* applies generally whenever "service is required or permitted." Minn. R. Civ. P. 5.02. Because Minn. R. Civ. P. 5.02 addresses service of any type of document, our reference to the rule in *Eischen* in the context of service of a mechanic's lien statement does not support the application in this case of Minn. R. Civ. P. 4.02, which deals exclusively with the service of "summons or other process."

■ In sum, we hold that the requirement in Minn. R. Civ. P. 4.02 that service of "a summons or other process" be made by someone who is "not a party to the action" is not applicable to service of a mechanic's lien statement under Minn. Stat. § 514.08, subd. 1(2).

### III.

■ We turn next to Brickwell's alternative argument. Brickwell argues that even if we conclude, as we have, that Minn. R. Civ. P. 4.02 does not apply, service of the mechanic's lien statement in this case was still improper under Minn.Stat. § 514.08, subd. 1(2), because service was done by an agent of the lien claimants. To determine whether service by Hunter was proper under the statute, we must interpret the language in Minn.Stat. § 514.08, subd. 1(2). That section provides that a mechanic's lien statement must be "served personally or by certified mail on the owner or the owner's authorized agent or the person who entered into the contract with the contractor." Minn.Stat. § 514.08, subd. 1(2).

■ The objective of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2010). In statutory interpretation "our first inquiry is whether a statute is ambiguous." *All Parks Alliance for Change v. Uniprop Mfrd. Hous.*

*Cmtys. Income Fund,* 732 N.W.2d 189, 193 (Minn.2007). A statute is ambiguous "if it is reasonably susceptible to more than one interpretation." *Current Tech. Concepts, Inc. v. Irie Enter., Inc.,* 530 N.W.2d 539, 543 (Minn.1995). Where "a statute's words are clear and unambiguous as applied to an existing situation, we construe the words according to their common and approved usage." *S.M. Hentges & Sons, Inc. v. Mensing,* 777 N.W.2d 228, 231 (Minn.2010). And when interpreting a statute we read and construe the statute as a whole, giving effect wherever possible to all of its provisions, and "interpret[ing] each section in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000).

The mechanic's lien statutes do not define "served personally." Respondents argue that, despite the lack of definition, "served personally" is unambiguous, and urge us to apply the plain meaning of "personal service" to service of a mechanic's lien statement. Under that plain meaning, which requires only actual delivery of the notice, and does not disqualify any class of individuals from performing the act of service, respondents contend that service was proper in this case.

Brickwell argues that Minn.Stat. § 514.08, subd. 1(2) is ambiguous and urges us to look to legislative history and public policy to resolve the ambiguity. Specifically, Brickwell notes that the legislature, throughout the mechanic's lien statutory scheme, distinguished between documents that must be served formally and those where informal "delivery" is sufficient. Brickwell argues that "service" of a

summons to commence a mechanic's lien action under Minn.Stat. § 514.11 is similar to the "served personally" language found in Minn.Stat. § 514.08, subd. 1(2), indicating that both the summons to commence a foreclosure action and the mechanic's lien statement must be served in the same formal manner. Brickwell contends that this formality precludes service by a party to the action.

To support its ambiguity argument, Brickwell also cites to the prelien notice statute,[4] which provides that notice be "*delivered* personally or by certified mail" to the owner of the property. *See* Minn.Stat. § 514.011, subd. 1 (2010) (emphasis added). Because the legislature uses different words in different sections of the mechanic's lien statutes, Brickwell argues the legislature must have meant that service under Minn.Stat. § 514.08, subd. 1(2), is different from and requires more than simple delivery by anyone authorized under Minn.Stat. § 514.011.

In answering the statutory interpretation question presented, we apply the plain and ordinary meaning of the words used in the statute. "Personal service" is defined as "[a]ctual delivery of the notice or process to the person to whom it is directed." *Black's Law Dictionary* 1259. The definition of personal service describes only the manner in which service must be made and contains no limitation upon who may make service. Even if Brickwell is correct that the legislature intended a distinction between "delivery" and "service," there is no reasoned basis to conclude that the difference in the two terms restricts who may effect service. In other words, the plain

---

4. Prelien notice is required to perfect a mechanic's lien in certain statutorily defined circumstances. *See* Minn.Stat. § 514.011 (2010). When required, the lien claimant must provide "prelien notice" to the property owner "either by personal delivery or by cer-

tified mail" of the work or materials provided within 10 days of entering into an agreement to provide work or, in the absence of a direct contract with the owner, within 45 days after work or materials are furnished. *See* Minn. Stat. § 514.011, subds. 1, 2.

language of "served personally" cannot reasonably be read to encompass a requirement that service be made by a non-party. *See Kirkpatrick v. Lewis*, 46 Minn. 164, 166, 47 N.W. 970, 971 (1891) ("[Q]uestions *by whom* service may be made, and the *mode and manner* of making it, [are] distinct subjects, thus indicating a general understanding that the latter does not include the former.").

In addition, "delivery" and "service" have consistently been used synonymously in the context of personal service. Personal service requires actual delivery. *See In re J.M.T.*, 759 N.W.2d 406, 408 (Minn.2009) (explaining that "[p]ersonal service requires delivery"); *Sprague v. Sprague*, 73 Minn. 474, 477, 76 N.W. 268, 269 (1898) (explaining that service of a divorce action was accomplished "by personal delivery of copies of the summons and complaint"); *Black's Law Dictionary* 1259 (defining personal service as "[a]ctual delivery of the notice or process to the person to whom it is directed"). Personal service under Minn. R. Civ. P. 4.03 is accomplished upon an individual, partnership, State, or corporation "by delivering a copy" of the summons. *See also* Minn. R. Civ. P. 5.02 (providing that service upon a party represented by an attorney "shall be made by delivering a copy to the attorney or party"); Minn. R. Civ.App. P. 125.03 (providing that "[p]ersonal service includes delivery of a copy of the document").

More specifically, in the context of the mechanic's lien statute, we have expressly equated personal delivery of prelien notice with personal service. *See Merle's Constr.*

*Co. v. Berg*, 442 N.W.2d 300, 303 (Minn. 1989). In *Berg* we framed the issue as "whether a prelien notice was *served* in compliance with the statute," even though Minn.Stat. § 514.011, governing prelien notice, requires that notice be "personally *delivered*." 442 N.W.2d at 303 (emphasis added). Referring throughout the opinion to the prelien notice being "served," we concluded that prelien notice was invalid because "[o]ther than an equivocal assertion that it *served* a prelien notice, the Construction Company offered no proof that it had. It presented no affidavit of personal *service* or proof of *service* by certified mail." *Id.* at 302 (emphasis added).

The interchangeable use of service and delivery throughout the Rules of Civil Procedure and our own jurisprudence regarding the mechanic's lien statutes indicates that the presence of the two terms in the mechanic's lien statutory scheme does not introduce any ambiguity. That the plain language of both terms requires the same action by a lien claimant does not compel, as Brickwell suggests, that we find ambiguity within the mechanic's lien statute. Because service and delivery are consistently used synonymously in the context of personal service, there is no basis for us to conclude that the legislature intended the two terms to be applied differently, and we therefore reject Brickwell's ambiguity argument.[5]

We agree with respondents that "served personally" as it references service of a mechanic's lien statement is clear and un-

---

**5.** Because we determine that "served personally" in Minn.Stat. § 514.08 is unambiguous, we decline to address Brickwell's arguments regarding the legislative history of the mechanic's lien statutes and the policy rationale underlying Brickwell's proposed rule that would require service of a mechanic's lien statement to be made by a disinterested per-

son. *See* Minn.Stat. § 645.16; *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn.2002) ("[T]he court must give a plain reading to any statute it construes, and when the language of the statute is clear, the court must not engage in any further construction.").

ambiguous. We therefore apply the common and approved usage of the phrase. *See Vlahos v. R&I Constr. of Bloomington, Inc.,* 676 N.W.2d 672, 679 (Minn.2004) ("When the language of a statute is plain and unambiguous, that plain language must be followed."). Because the common definition of personal service requires only actual delivery of the notice and does not restrict who may make personal service, we hold that service of the mechanic's lien statements by Hunter was proper.[6]

Affirmed.

6. In concluding that service in this case was proper we assume, but do not decide, that Hunter qualifies as "a party to the action" for purposes of Minn. R. Civ. P. 4.02. We therefore do not address the district court's alternate holding that "[i]n any event, Mr. Hunter—as a natural person—is not a party to this mechanic's lien foreclosure."